576 A.2d 992

Anthony and Marlene PATITUCCI, Individually and as Parents and Natural Guardians of James Patitucci, A Minor

v.

Thomas W. LAVERTY and Peter M. Pino.

Appeal of NATIONWIDE INSURANCE COMPANY.

Superior Court of Pennsylvania.

Submitted April 4, 1990.

Filed June 6, 1990.

Frederick C. Fletcher, III, Philadelphia, for appellant.

Robert M. Sitoski, Philadelphia, for appellee.

Alan C. Ostrow, Asst. City Sol., Philadelphia, for City of Philadelphia, participating party.

Before McEWEN, MONTEMURO and KELLY, JJ.

MONTEMURO, Judge:

This is an appeal filed by the Nationwide Insurance Company. Nationwide challenges the trial court's imposition of sanctions under Philadelphia Local Rule 170 for unreasonable refusal to settle. Nationwide argues that the trial court abused its discretion in finding that Rule 170 applies under the circumstances of the present case. Further, Nationwide contends that Rule 170 is unconstitutional. We reverse.

In July of 1979, James Patitucci, a minor at the time,[1] filed a complaint against Thomas W. Laverty and Peter M. Pino. Patitucci claimed that Laverty negligently operated a vehicle owned by Pino on September 20, 1977, causing Patitucci to be struck by the vehicle while he was crossing a street. Patitucci claimed, *inter alia*, that Laverty was operating the vehicle at an excessive rate of speed, failed to have the vehicle under control, and failed to keep a proper lookout for pedestrians. In answer to interrogatories, Patitucci stated that as a result of the accident, he suffered "contusions of the left arm and left leg; pain and discomfort of the rib and left shoulder areas; comminuted fracture of the left tibia." Patitucci stated that he continues to

1. At the time of the accident, Patitucci was fifteen years of age.

suffer pain in the rib and shoulder area, on occasion around the fracture site, and that his leg is deformed at the site of the fracture. Patitucci listed the following medical costs in his interrogatory answers:

| | |
|---|---|
| Methodist Hospital | $ 40.00 and $1,469.00 |
| Phillip J. Marone, M.D. | $290.00 |
| Medicine | $ 50.00 |

Additionally, Patitucci claimed that, as a result of his injuries from the accident, he missed four months and three days of employment as a stock boy at Sonny's Deli in Philadelphia.

The defendants denied negligence on the part of Laverty and, throughout the course of this matter, maintained that Patitucci's own negligence had been the cause of this accident and thus his unfortunate injuries. Nationwide, in its appellate brief, states that its insured, Laverty, "advised the carrier that the plaintiff ran into the street without looking and outside of any crosswalk." Brief for Appellant at 6. The police report concerning this accident contains the following:

Operator 1: Thomas W. LAVERTY.... Interviewed at his residence 12:15 PM 9–20–77, he states that: He was going west on Snyder Avenue. That he was on the right side of the street. That he was going approx. 20 MPH. That as he approached the corner of Etting Street he saw the pedestrian. That the pedestrian was approx. 6′ in front of his car, that he was running fast. That he came from his right. That he jammed on the brakes and swerved the [sic] pedestrian was approx. in the middle of the W. bound lane. He states that the pedestrian was running at an angle, toward the front of his car. He states that if the pedestrian ran straight across, he would not have struck him.

Pedestrian: James PATTITICCI [sic].... Interviewed in the X–Ray dept. of the Methodist Hospital 10:40 AM 9–20–77, in the presence of his mother, Marlene Pattitucci [sic], he states that: He was running to catch a bus. That he ran off the sidewalk at Etting Avenue towards the bus stop, crossing Snyder Avenue. He states that he

did not see the car but that he heard the brakes screech. He motioned that the car came from the left. That it struck him on the left leg. He states that he does not know what part of the car struck him.

WITNESSES:

Raymond DiAntonio.... Interviewed at the scene 9:30 AM 9–20–77. At the time of the accident was at the 2nd floor room of his residence. Has good unobstructed line of sight.... He states that: The pedestrian was running to catch a bus going E. on Snyder Avenue. He point out [sic] the bus stop, on the S. side of Snyder Avenue.... He states that as the pedestrian ran into Snyder Avenue out of Etting Street, there was a car coming East on Snyder Avenue. He states that the pedestrian saw that car, but never looked to his left, for West bound traffic. That the pedestrian was running on an angle across Snyder Avenue, towards the bus stop when he got hit.... He further states that there was nothing the driver could have done to avoid striking the pedestrian.

RESULTS OF INVESTIGATION:

Statement of witness is that the pedestrian was running across Snyder Avenue from Etting Street, running at an angle towards the S.E., out of the crosswalk when he was struck.

Operator 1 states that when he first saw the pedestrian he was approx. 6′ in front of his auto, running, at an angle towards the front of his car. Pedestrian stating [sic] that he was running to catch a bus, but does not know where on the highway he was struck. Skid marks ... 12′ out of the E. crosswalk of Etting Street.

Request this case be considered closed with no further Police Action.

R.R. at 40a–41a.[2]

In August of 1985, Judge I. Raymond Kremer of the Court of Common Pleas of Philadelphia County held a

2. Counsel for the appellant is admonished that much of the police report copied in the Reproduced Record is not legible. We do have a legible copy in our record from the trial court, but it is counsel's duty

pre-trial conference in this matter. Following this, the court filed a Memorandum of Pre-Trial Conference and Case Management Order which included the following statements: "Plaintiff makes a demand of policy limits of $25,-000. Defendant makes an offer of $2,000. The court makes a recommendation of $19,500. Upon consideration of all of the facts and all aspects of liability and damages and of the reasonable probabilities as to the anticipated results, defendant's offer unreasonably exposes defendant to an excess verdict and a failure of the defendant's carrier to make a settlement as recommended should be regarded as an unreasonable refusal to settle." Op. of Trial Court, February 28, 1987, at 4. "The Case Management Order placed the parties 'on notice that the court will invoke Rule 170, if appropriate.'" *Id.* at 5. Nationwide offered $10,000 to settle the case prior to trial, but this was not accepted by Patitucci. Patitucci indicated that he was willing to accept the court's recommendation of $19,500. Following trial, the jury assessed the causal negligence of Laverty at sixty percent, and the contributory negligence of Patitucci at forty percent. The jury assessed damages at $84,000. This was reduced to $50,400 to reflect Laverty's causal negligence. When delay damages were considered, the trial court entered a molded verdict against Laverty in the amount of $81,109.48. Counsel later advised the trial court that the parties had settled the case for $60,000, which was $35,000 in excess of Nationwide's policy coverage.

The trial court subsequently held a hearing to determine whether sanctions under Philadelphia General Civil Rule 170 were in order against Nationwide. Rule 170 provides:

Rule 170. *Sanctions for Failure to Settle.*

A "A party" under this regulation shall mean a named party and/or his insurance carrier.

B If [sic] any action tried by a jury in which the sole relief sought is money damages, the Trial Judge on

to this Court, as well as to his client, to provide this Court with a Reproduced Record which is usable when seeking appellate relief from this Court. *See* Pa.R.A.P. 2171(a).

his/her own motion or on motion of any party may direct the attorneys for the parties to appear for settlement conference.

C Prior to the termination of the settlement conference, the Trial Judge shall determine whether he/she can fairly evaluate the settlement value of the case.

D Should the Trial Judge determine that he/she can fairly evaluate the settlement value of the case, he or she shall promptly advise the attorneys for the parties of the evaluation, and the evaluation with the parties' agreement or non-agreement with it shall be recorded and made a part of the action.

E Should the case be tried to verdict and prior to the verdict one of the parties has agreed to accept or pay the amount recommended by the Trial Judge, then, if the final judgment is twenty percent (20%) or more than the Trial Judge's evaluation and the plaintiff has agreed to accept the Trial Judge's recommendation ... then the Trial Judge may, within ten (10) days after the final judgment, schedule a hearing to determine whether or not any sanctions shall be ordered against the party who had refused to settle.

F The Trial Judge shall determine whether or not sanctions shall be ordered under this Rule.

G The Trial Judge shall give at least ten (10) days' notice of the hearing to the party involved. The party involved shall have the right to appear with counsel and to present such evidence as may be appropriate.

H In exercising discretion as to whether or not sanctions should be imposed under this rule, the Trial Judge shall be guided by the following factors and criteria:

1 The final settlement demand and the final settlement offer and the reasons therefor.

2 The appraisal of the Trial Judge of the fair settlement value of the case.

3 Whether there was any substantial merit to the plaintiff's claim or any substantial merit to the defense of the action.

4 Whether the plaintiff's evidence of damages was exaggerated or whether the defendant's evidence unduly minimized plaintiff's damages.

5 Whether any change of conditions subsequent to the date of the Trial Judge's recommendation might account for the variation between the latter's recommendation and the jury's verdict, or substantiate a party's refusal to accept the Trial Judge's recommendation.

I In the event that the Trial Judge determines that sanctions shall be ordered against the party who refused to settle, he/she may order the party to pay the County of Philadelphia the reasonable costs incurred as a result of the party's refusal to settle, which costs shall be in accordance with the attached itemizations. In no event shall the order exceed ten percent (10%) of the judgment or Trial Judge's recommendation, whichever is higher.

*Comment:*

This general court regulation is intended to encourage settlement of those cases which experience shows can and should be settled if the parties are reasonable, and which, if not settled, tie up courtroom and court personnel for unreasonable periods of time.

The Regulation is not a penalty but is meant to impose, in proper cases, the actual cost of a trial upon the party who is obstinate, unreasonable or capricious.

The Conference Judge is urged to consider all factors before deciding to invoke the Regulation, including whether there are any valid jury questions as to liability or damages. In such cases, the Judge should do his utmost to effect a settlement without the necessity of invoking the Regulation. As indicated, it should be utilized to sanction a party whose attitude toward settlement is unreasonable under the circumstances....

On February 18, 1986, a hearing was held by Judge Kremer concerning Rule 170. Nationwide's attorney advised the court that based upon the statements of Laverty, and the contents of the police report, Nationwide classified the instant case as a "dart out" case, which are generally "cases that can be defended." R.R. at 100a. Counsel for Nationwide also emphasized the description of the accident offered by the eyewitness, Mr. DiAntonio, to the police. *Id.* at 101a. Counsel stated his view, as the litigator of the case, that he thought the case "could be won on ... liability." *Id.* at 103a. Our review of the transcript of the February 18, 1986, fails to reveal other argument concerning the merits of the position that Nationwide's refusal to settle this case was unreasonable, obstinate, or capricious, based upon the underlying facts and circumstances of the lawsuit instituted by Patitucci.

Judge Kremer imposed a Rule 170 sanction against Nationwide in the amount of $8,110.95. In so doing, the court made a finding that there "has been an unreasonable use and abuse of the valuable facilities of this Commonwealth" by Nationwide. Op. of Trial Court, February 28, 1987, at 19. The court stated that this finding was based upon "clear and convincing evidence." *Id.* A review of Judge Kremer's Opinion reveals a conclusory discussion of the basis for his rejection of Nationwide's claim that because they viewed the case as defensible, their conduct in not settling the case was reasonable and justified. Judge Kremer states only the following explanations in his Opinion:

The settlement in excess of policy coverage is an indication that Nationwide acknowledged it had unreasonably refused to settle. The verdict was more than four times the originally rejected recommendation and the settlement was more than three times the originally rejected recommendation. The amount of the verdict was reasonable and should have been anticipated from the credible evidence.... [This case] was a very simple case involv-

ing the collision of a motor vehicle with a pedestrian minor with admitted injuries, which cried out for settlement prior to trial. It was unreasonable for the insurance carrier to pretend that it might be the prevailing party. There was no reasonable basis for the insurance carrier to refuse to settle.... Questions of potential comparative negligence were raised by the parties and evaluated by the court prior to trial. The trial judge considered these issues fully when it made its very modest recommendation for settlement.... The "substantial merit" exception to the imposition of Rule 170 as suggested by counsel for defendants does not apply under the facts of this case.

*Id.* at 6, 14, and 18.

Although Nationwide originally sought an appeal from Judge Kremer's decision, this Court in July of 1988 remanded so that an *en banc* panel of the Philadelphia Court of Common Pleas could consider the case. 381 Pa.Super. 665, 548 A.2d 646. A hearing was held before Judge Kremer, Judge Armand Della Porta, and Judge Curtis C. Carson, Jr., on November 28, 1988. At this hearing, counsel for Nationwide again presented the argument that based upon the police report, the statements of Laverty, and other pretrial discovery,[3] Nationwide "expected that we would go into court and that it wouldn't be sixty/forty against us, it would be sixty/forty in our favor, maybe even more than that." R.R. at 167a. Counsel for Nationwide further argued as follows: "In a dart out case such as this where there is a real substantial question of liability, not only by virtue of the pleadings, but by virtue of what we see in investigation before the case even gets into suit.... This was a close case of liability." *Id.* at 168a. For most of the proceeding, the judges discussed among themselves the

3. Our record does not contain any deposition testimony, and the docket reveals that no depositions were filed with the trial court. Thus, the content of any depositions was not considered by Judge Kremer in formulating his settlement recommendation, and should have no effect on the application of Rule 170 to the present case.

interpretation and scope of Rule 170. The imposition of the Rule 170 sanction was ultimately affirmed by two judges. Judge Armand Della Porta dissented on the grounds that the provisions of Rule 170 did not support the imposition of the sanction because the defense of comparative negligence had substantial merit, giving the defendant the right to proceed to trial. Judge Della Porta noted that the jury's assessment of forty percent causal negligence to Patitucci suggests the credence of this position.

In finding the Rule 170 sanctions proper, the court *en banc* reasoned as follows:

> The trial judge did consider the merits of the defense. That was only one factor. That was why the court made a settlement recommendation of only $19,500 in the face of an ultimate jury verdict of $81,109.48 (including delay damages after deduction of 40% for comparative negligence).

> The court indicated in its Opinion of February 28, 1989 that it also considered other factors such as:

> 1) the pre-trial warning and notice that an offer of $2,000 was an unreasonable refusal to settle and exposure of the defendant to an excess verdict;

> 2) that the insurance carrier admitted it unreasonably refused to settle by paying $35,000 in excess of the policy limits of $25,000 after the verdict;

> 3) that the insurance carrier offered $9,000 and then $10,000 shortly before trial;

> 4) that the trial judge concluded that "The amount of the verdict was reasonable and should have been anticipated from the credible evidence."

> 4) that the trial judge concluded that "the jury was, if anything, overly fair to the defendant."

Op. of Trial Court, September 15, 1989, at 6–7.

In *DeFazio v. Labe*, 352 Pa.Super. 120, 507 A.2d 410 (1986), *aff'd.* 518 Pa. 390, 543 A.2d 540 (1988), this Court set

forth the following principles of law which are controlling presently:

It is without dispute that a local court has the right to promulgate local rules of procedure. *Ricci v. Ricci*, 318 Pa.Super. 445, 447, 465 A.2d 38, 39 (1983). We also recognize:

that procedural rules, either at the state or local level, are absolutely essential to the orderly administration of justice and the smooth and efficient operation of the judicial process. Every court has a limited power to made such rules as the interest of justice or the business of the court may require. 42 Pa.C.S. § 323.

*Equipment Finance, Inc. v. Toth*, 328 Pa.Super. 351, 355, 476 A.2d 1366, 1369 (1984). Additionally, it is well-settled that "(t)he application, construction and interpretation of a local rule of court are matters primarily to be determined by the court promulgating the local rule and we will interfere only where the court commits an abuse of discretion."

*DeFazio, supra* at 125, 507 A.2d at 413 (citations omitted).

Based upon the content of the police report, which outlined the statements of Patitucci, Laverty, and the eyewitness DiAntonio,[4] we are constrained to find that the trial court abused its discretion in characterizing Nationwide's refusal to settle as "obstinate, unreasonable, or capricious." There is nothing in the record to support the trial court's finding that *at the time Nationwide refused to settle this*

---

**4.** In the trial brief submitted by Nationwide, Nationwide mentions two "purported" eyewitnesses, not mentioned in the police report, which Nationwide anticipated would be called by plaintiffs at trial. R.R. at 33a. We have no way of knowing whether the testimony of these witnesses was considered by the trial court in formulating the settlement recommendation or in determining whether to impose Rule 170 sanctions. We must assume, based upon the fact that the trial court did not, at any time, mention this testimony, that the court did not consider it or rely upon it. Indeed, during the two hearings held with reference to the imposition of Rule 170 sanctions, before Judge Kremer and then before the court *en banc*, the only witness named and discussed in the record was Mr. DiAntonio.

*case,* their decision was unreasonable. Further, there is nothing in Judge Kremer's Opinion of February 28, 1987, to explain his conclusion that "the 'substantial merit' exception to the imposition of Rule 170 as suggested by counsel for defendants does not apply under the facts of this case." Op. of Trial Court, February 28, 1987, at 18. We must reject the trial court's reliance on Nationwide's settlement after trial as an admission on the part of Nationwide that its pre-trial refusal to settle was not reasonable. Based upon the trial court's own settlement recommendation, the jury's verdict was higher than anticipated by both the court and the parties. However, faced with a jury verdict, Nationwide was able to reach a settlement which reflected the jury's findings. In reviewing the provisions of Rule 170, we find the language of the Rule and its clear intent envisions that the trial court, when determining whether to impose Rule 170 sanctions, will limit its consideration to the facts and circumstances which existed when the pre-trial settlement negotiations occurred.

In the present case, Nationwide has consistently maintained that, in their view, the present case was one that was defensible because of evidence which pointed to Patitucci's own negligence as the primary if not sole cause of the accident. Indeed, it would appear from what we have in the record before us that this defense had substantial merit. Thus, we agree with Judge Armand Della Porta that, under the provisions of Rule 170, Nationwide's conduct cannot properly be characterized as unreasonable for the purpose of imposing sanctions. As we view the evidence which was available at the settlement conference, we find no support for the trial court's finding that Nationwide's defense lacked substantial merit. The statements of the eyewitness DiAntonio were favorable to the defense of comparative negligence and corroborated the statements given by Laverty. Further, Patitucci had told the police that he was running to catch a bus at the time he was struck. Under these circumstances, we thus find that the trial court

abused its discretion in imposing sanctions upon Nationwide.

Further, we note that although Nationwide did not offer the $19,500 settlement figure recommended by the trial court, Nationwide did make a settlement offer of $10,000. The verdict which was returned in this matter could not have been and was not anticipated by the trial court or the parties. Nationwide had, prior to trial, a defense of substantial merit to the cause of action against their insured which Nationwide believed warranted a defense verdict. Imposing a sanction under these circumstances will not achieve the important goal of Rule 170: to encourage settlement in cases where, if the parties were *reasonable,* settlement in lieu of trial should occur.

Based upon the foregoing reasons, we reverse and vacate the order of the trial court imposing Rule 170 sanctions upon appellant Nationwide.[5] Jurisdiction is relinquished.

---

**5.** Based upon our disposition in this case, we need not address the constitutional challenges to Rule 170 raised by Nationwide.